**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| Aspen Specialty Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:19-cv-6120 |
| | ) | |
| Forest River RV, Inc. Pamela K. Routon, | ) | |
| individually, and on behalf of the estate | ) | |
| of Richard J. Routon, Cody S. Routon, and | ) | |
| Zachary J. Routon, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF DUTY OF GOOD FAITH
AND FAIR DEALING AND FOR DECLARATORY JUDGMENT**

Plaintiff, Aspen Specialty Insurance Company ("Aspen"), pursuant to 28 U.S.C. §§ 2201

and 2202, for its Complaint for Breach of Contract, Breach of Duty of Good Faith and Fair

Dealing and for Declaratory Judgment against Defendants, Forest River RV, Inc. ("Forest

River"), Pamela K. Routon, individually, and on behalf of the estate of Richard J. Routon, Cody

S. Routon, and Zachary J. Routon (collectively "Routons"), states as follows:

## I.    NATURE OF ACTION

1.    In this insurance coverage action, Aspen brings this claim for breach of contract,

breach of the duty of good faith and fair dealing, and seeks a declaration that it owes no defense

or indemnification obligations to Forest River under a liability policy issued by Aspen with

respect to an underlying lawsuit filed by the Routons.

## II.    THE PARTIES

2.    Plaintiff, Aspen, is an insurance company organized and existing under the laws

of the state of North Dakota with its principal place of business in the state of Connecticut.

Aspen has been licensed to do business in the state of Indiana and has been doing business in the state of Indiana at all times relevant hereto.

3.      Defendant Forest River is incorporated in Indiana, with its principal place of business in Elkhart, Indiana.

4.      Defendant Pamela K. Routon, individually, and on behalf of the estate of Richard J. Routon is domiciled in Platt County, Missouri, and is a citizen of the state of Missouri. She has been named a party to this action in order to bind her to any judgment entered by this Court. In the event that she stipulates to be bound by this Court's judgment individually and on behalf of the estate of Richard J. Routon, Aspen will voluntarily dismiss her from this action.

5.      Defendant Cody S. Routon is domiciled in Clinton County, Missouri, and is a citizen of the state of Missouri. He has been named a party to this action in order to bind him to any judgment entered by this Court. In the event that he stipulates to be bound by this Court's judgment, Aspen will voluntarily dismiss him from this action.

6.      Defendant Zachary J. Routon is domiciled in Ray County, Missouri, and is a citizen of the State of Missouri. He has been named a party to this action in order to bind him to any judgment entered by this Court. In the event that he stipulates to be bound by this Court's judgment, Aspen will voluntarily dismiss him from this action.

### III.      JURISDICTION AND VENUE

7.      This court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1332 because it is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs, which the Routons seek in the underlying lawsuit.

8.      Pursuant to 28 U.S.C. Sec. 2201 and 2202, this Court has power to declare the rights of the parties with respect to an insurance policy over which there is an actual controversy.

9.      Venue is proper pursuant to 28 U.S.C. Sec. 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV.      THE ROUTON INCIDENT, *ROUTON* LAWSUIT, AND NOTICE

10.      On January 12, 2016, a propane gas explosion occurred in an RV owned by Richard Routon and manufactured by Forest River ("Routon Incident").

11.      On information and belief, prior to March 1, 2017, Forest River was provided with notice of the Routon Incident.

12.      On information and belief, prior to March 1, 2017, Forest River or its agent retained a fire cause and origins expert, Mr. May, to perform an investigation into the cause and origins of the Routon Incident.

13.      On March 1, 2017, the Routons filed a lawsuit styled *Pamela K. Routon, individually and for the wrongful death of Richard Routon, et al. v. Forest River, Inc., et al.*, Case Number 17CN-CV00130, in Clinton County, Missouri. ("*Routon* Lawsuit"). A true and correct copy of the Complaint filed in the *Routon* Lawsuit ("*Routon* Complaint"), without Exhibits, is attached hereto as *Exhibit A*.

14.      The *Routon* Complaint named the following defendants in addition to Forest River: Camping World RV Sales, LLC ("Camping World"); MTI Industries, Inc. ("MTI"); Whirlpool Corporation ("Whirlpool"); Tim Loveland; John Does 1, 2 and 3; and Airxcel, Inc. ("Airxcel").

15.      The *Routon* Complaint contained four counts against Forest River for: Negligence; Strict Liability (Product Defect); Strict Liability (Failure to Warn); and Breach of Warranty.

16. On information and belief, in the *Routon* Lawsuit, the Routons seek damages for medical expenses in the amount of approximately $1.573 million.

17. On April 18, 2017, Forest River filed an answer denying all claims.

18. In March, 2018, the Routons settled with MTI.

19. In July, 2018, the Routons settled with Camping World, Tim Loveland, and Whirlpool.

20. On July 20, 2018, the Routons filed an Amended Petition that contained the same four counts against Forest River, which were renumbered.

21. In March, 2019, the Routons settled with Airxcel.

22. Forest River first provided written notice of the Routon Incident to Aspen on September 6, 2018.

23. Forest River did not provide written notice of the Routon Incident to Aspen before September 6, 2018.

24. Forest River first provided written notice of the *Routon* Lawsuit to Aspen on September 6, 2018.

25. Forest River did not provide written notice of the *Routon* Lawsuit to Aspen before September 6, 2018.

## V. THE MARKS INCIDENT, LAWSUITS, AND NOTICE

26. On November 8, 2015, a fire occurred in an RV owned by Michael Marks and manufactured by Forest River ("Marks Incident").

27. On information and belief, prior to July 9, 2019, Forest River was provided with notice of the Marks Incident.

28.     On November 7, 2016, Marks filed a lawsuit styled *Michael Dwayne Marks, et al. v. Forest River, Inc. et al.*, Case Number C-164790C, in the 27th Judicial District of St. Landry Parish, Louisiana. ("*Marks* Lawsuit"). A true and correct copy of the Complaint filed in the *Marks* Lawsuit ("*Marks* Complaint"), without Exhibits, is attached hereto as *Exhibit B*.

29.     The *Marks* Complaint named the following defendants in addition to Forest River: Camping World; SRVJH, Inc.; Progressive Security Insurance Company; and American Modern Insurance Company.

30.     On November 7, 2016 Progressive filed a subrogation lawsuit styled *Progressive Security Insurance Company v. Forest River Inc. et al.*, Case Number C-164778C, in the 27th Judicial District of St. Landry Parish, Louisiana ("*Progressive* Lawsuit"). A true and correct copy of the Complaint filed in the *Progressive* Lawsuit ("*Progressive* Complaint"), without Exhibits, is attached hereto as *Exhibit C*.

31.     On November 14, 2016, American Western filed a subrogation lawsuit styled *American Western Home Insurance Company v. Forest River Inc. et al.*, Case Number 16-C-4795-D, in the 27th Judicial District of St. Landry Parish, Louisiana ("*American Western* Lawsuit"). A true and correct copy of the Complaint filed in the *American Western* Lawsuit ("*American Western* Complaint"), without Exhibits, is attached hereto as *Exhibit D*.

32.     The *Marks* Lawsuit, the *Progressive* Lawsuit, and the *American Western* Lawsuit were consolidated.

33.     On information and belief, damages collectively sought against Forest River in the *Marks* Lawsuit, the *Progressive* Lawsuit, and the *American Western* Lawsuit exceed $300,000.

34.     Forest River first provided written notice of the Marks Incident to Aspen on July 9, 2019.

35.     Forest River did not provide written notice of the Marks Incident to Aspen before July 9, 2019.

36.     Forest River first provided written notice of any of the three lawsuits related to the Marks Incident to Aspen on July 9, 2019.

37.     Forest River did not provide written notice of the *Marks* Lawsuit, the *Progressive* Lawsuit, or the *American Western* Lawsuit to Aspen before July 9, 2019.

## VI.     THE POLICY

38.     Aspen issued Policy No. CR0028D15, November 1, 2015 to November 1, 2016, to Forest River ("Policy"). A true and correct copy of the Policy is attached hereto as *Exhibit E* and incorporated herein by reference.

39.     The Policy contains a Self-Insured Retention Endorsement with Trailing SIR (ASPGL413 1114) pursuant to which Forest River has a $75,000 Self-Insured Retention per occurrence with a $25,000 trailing Self-Insured Retention once Forest River has paid $1,000,000 in the aggregate.

40.     The Policy provides insurance with limits of $1M each occurrence and a $2M general aggregate.

41.     The relevant portions of the Policy are as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or

"property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \* \*

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage **C;**
   b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
   a. Damages under Coverage **A;** and
   b. Medical expenses under Coverage **C**
   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

\* \* \* \*

**COMMON POLICY CONDITIONS**

\* \* \* \*

**F.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual named insured.

\* \* \* \*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \* \*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\* \* \* \*

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

* * * *

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes

equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * * *

**8. Transfer of Rights of Recovery Against Others**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## SECTION V – DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death, resulting from any of these at any time.

* * * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general conditions.

* * * *

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

\* \* \* \*

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

42. The Policy also contains a **SELF INSURED RETENTION ENDORSEMENT WITH TRAILING SIR**, which provides:

---

This endorsement modifies insurance provided under the following:
**Commercial General Liability Coverage Form**

---

In consideration of the premium charged, it is agreed that:

| SCHEDULE | |
|---|---|
| Self-Insured Retention: | $75,000 Each Occurrence including "defense expenses" for all Forest River claims, except for Bus claims |
| Stop Loss Aggregate: | $1,000,000 with a trailing Self-Insured Retention of $25,000 once the $1,000,000 has been paid by the insured. |

## 1. LIMITS OF INSURANCE

The Limits of Insurance as set forth in the Declarations shall each apply excess of a Self-Insured Retention (hereafter referred to as the "Retained Limit") designated in the Schedule above.

You will be solely and directly responsible for payment of all amounts within the Retained Limit. Your Retained Limit may not be insured, in whole or in part, by any insurance carrier or reinsurance carrier, or otherwise, without our prior written approval. The existence of any insurance for an "occurrence", claim, "suit" or offense otherwise covered by this policy but within the Retained Limit will not affect your responsibility to pay the full amount of the Retained Limit before this policy will apply to such "occurrence", claim, "suit" or offense.

**IN NO EVENT WILL WE BE REQUIRED TO PAY ANY AMOUNT WITHIN THE RETAINED LIMIT, OR ANY PORTION THEREOF.**

## 2. DEFENSE AND SETTLEMENT

Our defense and settlement obligations set forth in Section I – Coverages, with respect to both Coverage Part A: Bodily Injury And Property Damage Liability, and Coverage Part B: Personal And Advertising Injury Liability, are deleted and replaced by the following:

**a.** We do not have any duty to investigate, defend or settle any "occurrence", claim, "suit", or offense unless and until the Retained Limit is actually paid in full by you with respect to such "occurrence", claim, "suit", or offense. However, we will have the right either to participate with you, or to assume control over the investigation, settlement, defense or appeal of any "occurrence", claim, "suit", or offense. In either case, you will remain solely responsible for all amounts within the Retained Limit.

**b.** **(1)** Once the Retained Limit is exhausted by you with respect to any "occurrence", claim, "suit", or offense, we shall thereafter have the right and duty to defend that "occurrence", claim, "suit", or offense in accordance with the terms of this policy.

   **(2)** At your request, you will pay us any portion of your Retained Limit that we deem reasonable for any "occurrence", claim, "suit", or offense. If the total amount of the judgment or settlement of the "occurrence", claim, "suit", or offense and related defense expenses that we pay is less than your Retained Limit we will return to you the amount you paid us that is excess of the amount we pay.

**c.** If we exercise our right to assume the defense and the control of any "occurrence", claim, "suit", or offense, from you, we shall have sole and absolute authority to settle for any amount, including any amounts within your Retained Limit. We will advise and consult with you prior to making any such settlement, however, we will have no obligation to obtain your consent to any settlement we make that requires payment from you of any amount within the Retained Limit, and you hereby waive any claim or defense against us resulting from your entering into any such settlement without your approval.

**d.** If we do not exercise our right to assume the defense and control of an "occurrence", claim, "suit", or offense you shall have sole and absolute authority to settle for any amount within your Retained Limit. You may not agree to a settlement of any "occurrence", claim, "suit", or offense for any amount in excess of the Retained Limit without our prior written approval. Your failure to obtain such approval will void coverage under this policy with respect to such "occurrence, claim, "suit", or offense.

**e.** The Retained Limit applies to "occurrences", claims, "suits", and offenses within the scope of coverage provided by the policy. If you make any payments or incur any costs or expenses in respect to any "occurrences", claims, "suits", or offenses that are outside the scope of this policy for any reason, such amounts will not count towards the reduction of your Retained Limit.

**f.** You agree that we shall have the exclusive right to appoint the third party claims administrator responsible for handling the defense, investigation, and handling of "occurrences", claims, "suits", and offenses within the Retained Limit.

### 3. DEFENSE EXPENSES

You are responsible for "defense expenses" according to your election as indicated by an "X" below. If no election is indicated, subparagraph **a.** below will apply.

**a.** ___All "defense expenses" up to the Retained Limit. However, the most you will be responsible for with respect to damages and "defense expenses" combined shall not exceed the Retained Limit as the Retained Limit.

**b.** ____A part of "defense expenses". That part will be calculated by dividing the smaller of (i) the Retained Limit; or (ii) the amount of damages, by the amount of damages. If for any reason we pay no damages you will be solely responsible for all "defense expenses".

**c.** ____All "defense expenses".

Your duty to pay "defense expenses" applies separately to each "occurrence" or each offense. If we exercise our right to assume from you the defense and control of any "occurrence", claim, "suit", or offense that is within your Retained Limit, you are responsible for "defense expenses" in accordance with the above election.

## 4. INSOLVENCY

Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Retained Limit will not increase our obligations under the policy.

## 5. NOTICE PROVISIONS

**a.** You shall immediately notify us in writing of any "occurrence" or claim which:

(1) Involves serious "bodily injury"; including but not limited to burns, spinal cord injury, amputation, brain damage, loss of eyesight or hearing, a fatality, or any "occurrence" or claim which is likely to exceed 50% of the Retained Limit, including both damages and "defense expenses", or for which you have established a reserve at or more than 50% of the Retained Limit, as above; or

(2) You receive any notice of a "suit" in which the damage demand exceeds the Retained Limit and/or any notice of a "suit" or claim for punitive damages.

**b.** On a quarterly basis you shall provide us with a written summary (loss run) of all "occurrences", claims, "suits", or offenses which have or may result in payments within the Retained Limit. This summary must provide:

(1) The date of the "occurrences", claims, "suits", or offenses;

(2) The name(s) of the injured person(s) or identification of the damaged property;

(3) A description of the injury or damage;

(4) The amount paid or reserved, including defense expenses, resulting from the "occurrences", claims, "suits", or offenses; and

(5) Such other information as we shall from time to time reasonably request.

43. **SECTION V – DEFINITIONS** of the policy is amended to include the following:

\* \* \* \*

23. "Defense expenses" means reasonable and necessary fees, costs and expenses incurred by us, or by you, with our prior written consent, including but not limited to attorneys' fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of an "occurrence", claim, "suit", or offense, including the cost of appeal bonds; provided that we shall not be obligated to apply or furnish appeal bonds. "Defense expenses" does not include third-

party administrators' fees or expenses, salary charges, wages, or expenses of your partners, principals, officers, directors, members or "employees".

24. "Stop Loss Aggregate" means the maximum amount of dollars, as set forth in Schedule A above, paid by the Named Insured as the "Retained Limit" for all "occurrence" or offenses which occur during the policy period. On each renewal, continuation, or anniversary of the effective date of this policy, a separate "stop loss aggregate" will be determined.

## VII.   COUNT I – BREACH OF CONTRACT

44.     Aspen realleges and incorporates by reference the allegations contained in Paragraphs 1 through 43 as though fully stated herein.

45.     The Policy, as a condition precedent to insurance, requires immediate notice in writing of any "occurrence" or claim which: (1) "[i]nvolves serious 'bodily injury' including but not limited to burns, … a fatality, or any 'occurrence' or claim which is likely to exceed 50% of the Retained Limit, including both damages and 'defense expenses' …or (2)...a 'suit' in which the damages demanded exceeds the Retained Limit …."

46.     The Policy, as a condition precedent to insurance, requires that Forest River, "[o]n a quarterly basis … shall provide … a written summary (loss run) of all 'occurrences', claims, 'suits', or offenses which have or may result in payments within the Retained Limit…."

47.     The Policy gives Aspen the "right either to participate with you, or to assume control over the investigation, settlement, defense or appeal of any … 'suit'…."

48.     The Policy, as a condition precedent, provides that Forest River "must: (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the … 'suit'; … (3) Cooperate with us in the … defense against the 'suit'; and (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

49.     The Policy requires that Forest River transfer to Aspen any "rights to recover all or any part of any payment [Aspen has] made…" under the Policy and "must do nothing after loss to impair" those rights.

50.     The Routon Incident constitutes an "occurrence" under the Policy.

51.     The *Routon* Lawsuit constitutes a "suit" under the Policy.

52.     Forest River had knowledge of the Routon Incident, which occurred on January 12, 2016, prior to the filing of the *Routon* Lawsuit on March 1, 2017.

53.     Forest River failed to provide Aspen with written notice of the Routon Incident or *Routon* Lawsuit until September 6, 2018.

54.     The Marks Incident constitutes an "occurrence" under the Policy.

55.     The *Marks* Lawsuit, *Progressive* Lawsuit, and *American Western* Lawsuit each constitute a "suit" under the Policy.

56.     On information and belief, Forest River had knowledge of the Marks Incident, which occurred on November 8, 2015, prior to the filing of the *Marks* Lawsuit, *Progressive* Lawsuit, or *American Western* Lawsuit.

57.     Forest River failed to provide Aspen with written notice of the Marks Incident or any of the three lawsuits related to the Marks Incident until July 9, 2019.

58.     Forest River's failure to provide notice under the terms of the Policy with respect to the Routon Incident, *Routon* Lawsuit, Marks Incident, *Marks* Lawsuit, *Progressive* Lawsuit, and *American Western* Lawsuit constitute breaches of the Policy.

59.     Forest River's breach of the Policy has damaged Aspen, including costs and fees associated with its preparation for and participation in mediation.

60.     Aspen is entitled to an award of its monetary damages, specific performance, and for other such relief.

**WHEREFORE,** Plaintiff Aspen prays that this Honorable Court enter an order in favor of Aspen and against Defendants, as follows:

A.      Adjudging, decreeing and declaring that Forest River has breached its contract under the Policy;

B.      Adjudging, decreeing and declaring that Forest River owes Aspen monetary damages;

C.      Adjudging, decreeing and declaring that Forest River must grant specific performance under the Policy; and

D.      Granting such other and further relief as it deems just and proper under the circumstances.

## VIII.      COUNT II – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

61.     Aspen realleges and incorporates by reference the allegations contained in Paragraphs 1 through 43 as though fully stated herein.

62.     The Policy, as a condition precedent to insurance, the requires immediate notice in writing of any "occurrence" or claim which: (1) "[i]nvolves serious 'bodily injury' including but not limited to burns, … a fatality, or any 'occurrence' or claim which is likely to exceed 50% of the Retained Limit, including both damages and 'defense expenses' …or (2)...a 'suit' in which the damages demand exceeds the Retained Limit …."

63.     The Policy, as a condition precedent to insurance, requires that Forest River, "[o]n a quarterly basis … shall provide … a written summary (loss run) of all 'occurrences', claims, 'suits', or offenses which have or may result in payments within the Retained Limit…."

64.     The Policy gives Aspen the "right either to participate with you, or to assume control over the investigation, settlement, defense or appeal of any … 'suit'…."

65.     The Policy, as a condition precedent, provides that Forest River "must: (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the … 'suit'; … (3) Cooperate with us in the … defense against the 'suit'; and (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

66.     The Policy requires that Forest River transfer to Aspen any "rights to recover all or any part of any payment [Aspen has] made…" under the Policy and "must do nothing after loss to impair" those rights.

67.     The Routon Incident constitutes an "occurrence" under the Policy.

68.     The *Routon* Lawsuit constitutes a "suit" under the Policy.

69.     Forest River had knowledge of the Routon Incident, which occurred on January 12, 2016, prior to the filing of the *Routon* Lawsuit on March 1, 2017.

70.     Forest River failed to provide Aspen with written notice of the Routon Incident or *Routon* Lawsuit until September 6, 2018.

71.     The Marks Incident constitutes an "occurrence" under the Policy.

72.     The *Marks* Lawsuit, *Progressive* Lawsuit, and *American Western* Lawsuit each constitute a "suit" under the Policy.

73.     Forest River had knowledge of the Marks Incident, which occurred on November 8, 2015, prior to the filing of the *Marks* Lawsuit, *Progressive* Lawsuit, or *American Western* Lawsuit.

74.     Forest River failed to provide Aspen with written notice of the Marks Incident or any of the three lawsuits related to the Marks Incident until July 9, 2019.

75.     On information and belief, Forest River deliberately delayed providing written notice to Aspen under the Policy with respect to the Routon Incident, *Routon* Lawsuit, Marks Incident, *Marks* Lawsuit, *Progressive* Lawsuit, and *American Western* Lawsuit.

76.     On information and belief, Forest River has a pattern and practice of providing delayed notice under the Policy such that it is able to retain control of its defense against lawsuits in breach of the terms of the Policy.

77.     By deliberately failing to provide timely notice of the Routon Incident, *Routon* Lawsuit, Marks Incident, *Marks* Lawsuit, *Progressive* Lawsuit, and *American Western* Lawsuit, Forest River breached the reciprocal duty of good faith and fair dealing under the Policy.

78.     Forest River's breach of the duty of good faith and fair dealing has materially damaged Aspen.

79.     Forest River's breach of the duty of good faith and fair dealing has voided the Policy.

80.     Aspen is entitled to an award of its monetary damages, a declaration that the Policy is void, and for other such relief.

**WHEREFORE,** Plaintiff Aspen prays that this Honorable Court enter an order in favor of Aspen and against Defendants, as follows:

A.     Adjudging, decreeing and declaring that Forest River has breached its duty of good faith and fair dealing under the Policy;

B.     Adjudging, decreeing and declaring that Aspen is entitled to a judgment in its favor, plus prejudgment interest and costs;

C. Adjudging, decreeing and declaring that the Policy is void; and

D. Granting such other and further relief as it deems just and proper under the circumstances.

## IX.   COUNT III – DECLARATORY JUDGMENT – *ROUTON* LAWSUIT

81. Aspen realleges and incorporates by reference the allegations contained in Paragraphs 1 through 25 and 38 through 43 as though fully stated herein.

82. The Policy, as a condition precedent to insurance, requires immediate notice in writing of any "occurrence" or claim which: (1) "[i]nvolves serious 'bodily injury' including but not limited to burns, … a fatality, or any 'occurrence' or claim which is likely to exceed 50% of the Retained Limit, including both damages and 'defense expenses' …or (2)...a 'suit' in which the damages demanded exceeds the Retained Limit …."

83. The Policy, as a condition precedent to insurance, requires that Forest River, "[o]n a quarterly basis … shall provide … a written summary (loss run) of all 'occurrences', claims, 'suits', or offenses which have or may result in payments within the Retained Limit…."

84. The Policy gives Aspen the "right either to participate with you, or to assume control over the investigation, settlement, defense or appeal of any … 'suit'…."

85. The Policy, as a condition precedent, provides that Forest River "must: (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the … 'suit'; … (3) Cooperate with us in the … defense against the 'suit'; and (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

86.     The Policy further requires that Forest River transfer to Aspen any "rights to recover all or any part of any payment [Aspen has] made…" under the Policy and "must do nothing after loss to impair" those rights.

87.     The Routon Incident constitutes an "occurrence" under the Policy.

88.     The *Routon* Lawsuit constitutes a "suit" under the Policy.

89.     Forest River had knowledge of the Routon Incident, which occurred on January 12, 2016, prior to the filing of the *Routon* Lawsuit on March 1, 2017.

90.     Forest River failed to provide Aspen with written notice of the Routon Incident or *Routon* Lawsuit until September 6, 2018.

91.     Forest River failed to provide Aspen with written notice of the *Routon* Lawsuit before it filed its answer to the Petition on April 18, 2017.

92.     Forest River failed to consult with or provide written notice to Aspen regarding the potential exposure of other defendants or third-parties related to the Routon Incident.

93.     Forest River failed to consult with Aspen regarding its decision not to file cross-claims or third-party actions against other defendants or third-parties in connection with the Routon Incident.

94.     Forest River failed to provide written notice to Aspen of the *Routon* Lawsuit until all remaining defendants had settled out of the *Routon* Lawsuit.

95.     Forest River's failure to comply with the notice requirements of the Policy precluded Aspen from exercising its right to consider assuming control of the investigation, defense and settlement of the *Routon* Lawsuit, including the right to select counsel, investigate potential defenses, cross-claims against the other defendants prior to the settlement and dismissal

of those other defendants, or third-party actions against additional parties that might have liability with respect to the Routon Incident.

96.  Forest River's failure to comply with the notice requirements of the Policy has resulted in the loss of rights by Aspen to investigate for the existence of potential "other insurance."

97.  Forest River's failure to comply with the notice requirements of the Policy has resulted in the loss of rights by Aspen to investigate and/or pursue potential contribution or subrogation against other parties.

98.  Aspen has been materially prejudiced by Forest River's breach of the notice provisions of the Policy.

99.  Therefore, Aspen owes no obligation, whether defense or indemnity, under the Policy to Forest River in connection with the Routon Incident and *Routon* Lawsuit.

100.  An actual controversy exists between Aspen and Defendants, and by reason of 28 U.S.C. Sec. 2201, this Court is vested with power to declare the rights and liabilities of the parties hereto under the terms and conditions of the Policy and to adjudicate the final rights of the parties hereto thereunder, and to give such other and further relief as may be necessary to enforce the same.

**WHEREFORE,** Plaintiff Aspen prays that this Honorable Court enter an order in favor of Aspen and against Defendants, as follows:

E.  Adjudging, decreeing and declaring that Aspen has no duty to indemnify Forest River for any settlement or judgment in the *Routon* Lawsuit;

F.  Adjudging, decreeing, and declaring that Aspen has no obligation to pay for any defense or defense expenses in connection with the *Routon* Lawsuit; and

G.  Granting such other and further relief as it deems just and proper under the circumstances.

## X.  PRAYER FOR RELIEF

WHEREFORE, for the reasons stated hereinabove, Aspen Insurance Service Corporation prays that this Court enter judgment, finding in favor of the Aspen and against Defendants, finding and declaring as follows:

A.  Forest River has breached its contract under the Policy;

B.  Aspen is entitled to damages for Forest River's breach of the Policy;

C.  Forest River must grant specific performance under the Policy

D.  Forest River has breached its duty of good faith and fair dealing owed to Aspen under the Policy;

E.  Aspen is entitled to damages for Forest River's breach of its duty of good faith and fair dealing owed to Forest River under Policy;

F.  Because Forest river breached its duty of good faith and fair dealing, the Policy is void;

G.  Aspen has no duty to pay for any defense or defense expenses in connection with the *Routon* Complaint;

H.  Aspen has no duty to indemnify Forest River for any settlement or judgment in connection with the *Routon* Complaint; and

I.  Grant such further relief as the Court deems just and award Aspen its costs incurred herein.

Dated:  September 12, 2019

Respectfully Submitted By,


By      */s/ Michael T. Crabb*_____
    Attorneys for Plaintiff


Michael J. Kuckelman    MO #41489
Michael T. Crabb      MO #62241
KUCKELMAN TORLINE KIRKLAND, INC.
10740 Nall Ave., Suite 250
Overland Park, KS 66211
(913) 948-8610 (phone)
(913) 948-8611 (fax)
mkuckelman@ktk-law.com
mcrabb@ktk-law.com

Timothy J. Fagan (IL ARDC # 6202552) (*Pro Hac Vice* Petition to be filed)
Britta A. Sahlstrom (IL ARDC # 6318035)
SMITHAMUNDSEN LLC
150 North Michigan Avenue -Suite 3300
Chicago, Illinois  60601
(312) 894-3200
(312) 894-3210 (fax)
tfagan@salawus.com
bsahlstrom@salawus.com