# EXHIBIT A

Electronically Filed - Clinton - March 01, 2017 - 10:47 AM

**IN THE CIRCUIT COURT OF CLINTON COUNTY, MISSOURI**

**PAMELA K. ROUTON**, individually, and for
the wrongful death of **RICHARD J.
ROUTON**,

**CODY S. ROUTON,** and

**ZACHARY J. ROUTON,**

       Plaintiffs,

v.

**FOREST RIVER, INC. D/B/A FR
ACQUISITION, INC.,**
    Serve:
    CSC-Lawyers Incorporating Service
    Company
    221 Bolivar
    Jefferson City, MO 65101

**CAMPING WORLD RV SALES, LLC,**
    Serve:
    CT Corporation System
    120 South Central Avenue
    Clayton, MO 63105

**TIM LOVELAND,**
    Serve:
    4729 Holke Street
    Blue Springs, MO 64015-9505

**MTI INDUSTRIES, INC.,**
    Serve:
    Missouri Secretary of State's Office
    Attention: Lisa Werdehausen
    600 West Main Street, Room 322
    Jefferson City, MO 65101

**WHIRLPOOL CORPORATION**
    Serve:
    CSC-Lawyers Incorporating Service
    Company
    221 Bolivar
    Jefferson City, MO 65101

Case No.

Division:

1

**AIRXCEL, INC. – Suburban Division**
Serve:
Missouri Secretary of State's Office
Attention: Lisa Werdehausen
600 West Main Street, Room 322
Jefferson City, MO 65101

**JOHN DOE 1,**

**JOHN DOE 2,** and

**JOHN DOE 3,**

      Defendants.

## PETITION FOR DAMAGES

COME NOW Plaintiffs, Pamela Routon, individually, and for the wrongful death of Richard Routon, and Cody Routon and Zach Routon, by and through their attorneys of record, and for their Petition for Damages against Defendants Forest River, Inc. d/b/a FR Acquisition, Inc.; Camping World RV Sales, LLC; Tim Loveland; MTI Industries, Inc.; Whirlpool Corporation; AIRXCEL, Inc.; John Doe 1; John Doe 2; and John Doe 3 allege and state as follows:

## PARTIES

1.      Plaintiff Pamela K. Routon ("Pamela") is and was, at all relevant times, a resident of Missouri.

2.      Richard J. Routon ("Richard") was, at all relevant times hereto, a resident of Missouri who died on February 19, 2016, from injuries sustained on January 12, 2016, in Clinton County, Missouri as the result of a propane gas explosion that occurred in his fifth-wheel travel trailer.

3.      Pamela, as Richard's lawfully wedded wife, is a member of the statutory class of beneficiaries entitled to bring and recover damages from a wrongful death cause of action arising from the death of Richard, as more fully detailed in R.S. Mo. § 537.080. Richard is also survived by his daughter, Michelle Renee Routon.

2

4.      Plaintiff Cody S. Routon ("Cody") is a natural person who, at all times relevant to this action, resided in Clinton County, Missouri.

5.      Plaintiff Zachary J. Routon ("Zach") is a natural person who, at all times relevant to this action, resided in Clinton County, Missouri.

6.      Defendant Forest River, Inc., d/b/a FR Acquisition, Inc. ("Forest River") is an Indiana corporation registered to do business in Missouri as FR Acquisition, Inc; and is in good standing in the State of Missouri. Defendant Forest River may be served through its registered agent listed in the caption above. Defendant Forest River was, at all times complained of herein, doing substantial and continuous acts of business in the State of Missouri and such acts constituted the nexus of the damages complained of herein. Defendant Forest River manufactured, assembled, designed, distributed, furnished, and sold in a national marketing scheme a defective product which foreseeably found its way into this State resulting in the incident and damages complained of herein.

7.      Personal jurisdiction is proper over Defendant Forest River, as Defendant Forest River conducts business in Missouri through its actions and those of its affiliated/subsidiary companies and agents, in that it causes its products to be marketed, sold, and used within the State of Missouri. As such, Defendant Forest River derives significant revenue from its activities and the sale of its products in the State of Missouri. Through its actions, Defendant Forest River has consented to the jurisdiction of this Court and reasonably anticipates being haled into a Missouri Court.

8.      Defendant Camping World RV Sales, LLC ("Camping World") is a Minnesota limited liability company that is authorized to do business in Missouri. Defendant Camping World may be served with process at the address listed in the caption above. Defendant Camping World was, at all times relevant hereto, doing business in the State of Missouri and such acts constituted the nexus of the damages complained of herein. Defendant Camping World is the dealership from which Pamela and Richard Routon purchased the 2012 Forest River, Cedar Creek 36RE Fifth Wheel Travel Trailer,

3

Vehicle Identification Number ("VIN") 4X4FCRM21CS206111 (hereinafter referred to as "the Unit") and the dealership which provided maintenance, service, and/or repair on the Unit.

9. Personal jurisdiction is proper over Defendant Camping World, as Defendant Camping World conducts business in Missouri through its actions and those of its affiliated/subsidiary companies and agents, in that it causes its products to be marketed, sold and used within the State of Missouri. As such, Defendant Camping World derives significant revenue from its activities and the sale of its products in the State of Missouri. Through its actions, Defendant Camping World has consented to the jurisdiction of this Court and reasonably anticipates being haled into a Missouri Court.

10. Defendant Tim Loveland ("Loveland") is and was, at all relevant times, a resident of Jackson County, Missouri, is subject to personal jurisdiction, and may be served with process at the address listed in the caption above. Upon information and belief, Loveland sold the Unit to the Routons and performed, or should have performed, the walkthrough inspection with them.

11. Defendant MTI Industries, Inc. ("MTI") is a Delaware corporation with its principal place of business located in Illinois. Defendant MTI may be served with process at the address listed in the caption above. Defendant MTI manufactured and sold in a national marketing scheme a defective product which foreseeably found its way into this State resulting in the incident and damages described herein.

12. Personal jurisdiction is proper over Defendant MTI, as Defendant MTI conducts business in Missouri through its actions and those of its affiliated/subsidiary companies and agents, in that it causes its products to be marketed, sold and used within the State of Missouri. As such, Defendant MTI derives significant revenue from its activities and the sale of its products in the State of Missouri. Through its actions, Defendant MTI has consented to the jurisdiction of this Court and reasonably anticipates being haled into a Missouri Court.

4

Electronically Filed - Clinton - March 01, 2017 - 10:47 AM

13.     Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its principal place of business located in Michigan; and is in good standing in the State of Missouri. Defendant Whirlpool may be served with process at the address listed in the caption above. Defendant Whirlpool manufactured and sold in a national marketing scheme a defective product which foreseeably found its way into this State resulting in the incident and damages described herein.

14.     Personal jurisdiction is proper over Defendant Whirlpool, as Defendant Whirlpool conducts business in Missouri through its actions and those of its affiliated/subsidiary companies and agents, in that it causes its products to be marketed, sold, and used within the State of Missouri. As such, Defendant Whirlpool derives significant revenue from its activities and the sale of its products in the State of Missouri. Through its actions, Defendant Whirlpool has consented to the jurisdiction of this Court and reasonably anticipates being haled into a Missouri Court.

15.     Defendant AIRXCEL, Inc. ("AIRXCEL") is a Delaware corporation with its principal place of business located in Tennessee. Defendant AIRXCEL may be served with process at the address listed in the caption above. Defendant AIRXCEL manufactured and sold in a national marketing scheme a defective product which foreseeably found its way into this State resulting in the incident and damages described herein.

16.     Personal jurisdiction is proper over Defendant AIRXCEL, as Defendant AIRXCEL conducts business in Missouri through its actions and those of its affiliated/subsidiary companies and agents, in that it causes its products to be marketed, sold, and used within the State of Missouri. As such, Defendant AIRXCEL derives significant revenue from its activities and the sale of its products in the State of Missouri. Through its actions, Defendant AIRXCEL has consented to the jurisdiction of this Court and reasonably anticipates being haled into a Missouri Court.

17.     John Doe defendants 1 through 3 are employees, technicians, or other representatives of Camping World, LLC who assisted in the sale of the Unit to Richard and Pamela, including

Electronically Filed - Clinton - March 01, 2017 - 10:47 AM

inspecting and repairing the Unit. Upon reasonable information and belief, all of these individuals had

contact with the Unit and Plaintiffs in Missouri and would expect to be haled into court in Missouri.

Furthermore, upon reasonable information and belief, John Doe Defendants 1 through 3 are residents

of Missouri.

18.     Venue is proper in this judicial district pursuant to R.S.Mo. Section 508.010 in that

Richard was killed by the wrongful and negligent acts of the Defendants in Clinton County, Missouri,

and Pamela, Cody, and Zach were first injured by the wrongful and negligent acts of the Defendants

in Clinton County, Missouri.

## THE OCCURRENCE

19.     Prior to January 12, 2016, in the ordinary course of its business, Defendant Forest

River designed, manufactured, distributed, and sold the Unit.

20.     On or about May 23, 2014, Richard and Pamela purchased the Unit from Defendant

Camping World at its Kansas City branch located at 3001 NE Jefferson, Grain Valley, Missouri 64029

and continued to own the Unit for all times thereafter.

21.     During the early evening of January 12, 2016, Richard, Pamela, and Cody were

preparing to cook dinner in the Unit and were otherwise using the Unit for its ordinary and customary

purposes.

22.     When Richard commenced ignition of the stove, the Unit exploded, erupted in flames,

and burned.

23.     At the time of the explosion, Richard, Pamela, and Cody were present in the Unit.

24.     Richard suffered severe personal injuries as a result of the explosion that led to his

hospitalization and, ultimately his death, on February 19, 2016.

25.     Pamela and Cody both sustained severe physical and emotional injuries as a result of

the explosion.

26.     Zach heard and felt the explosion in his home nearby and immediately rushed to the Unit to assist in extracting his grandmother, Pamela, from the Unit and attempted to care for his grandfather, Richard and his cousin, Cody.

27.     The explosion destroyed the Unit, personal items within the Unit and personal property present on the real property upon which the Unit sat (hereinafter collectively referred to as the "property damage").

28.     The explosion was caused by the ignition of propane gas which had escaped into the Unit (hereinafter referred to as "fugitive gas").

29.     At all relevant times herein, the Routons were exercising due care and caution.

30.     Although acting reasonably at all times pertinent hereto, Plaintiffs were not alerted to the presence of fugitive gas by an alarm of any kind.

## GENERAL ALLEGATIONS

31.     The aforesaid injuries and wrongful death of Richard and the injuries to Pamela, Cody, and Zach were directly caused or directly contributed to be caused by the joint, combined, concurrent and/or several faults of the Defendants.

32.     Propane gas was used to supply power to certain appliances within the Unit, such as the range/oven and furnace.

33.     Propane gas is highly flammable.

34.     Propane gas is heavier than air.

35.     A propane gas leak may not produce an odor that is strong enough to be detected by the human nose and the odor of propane is not a sufficient warning to consumers standing alone.

36.     Propane gas detectors have, at all relevant times hereto, been available in the marketplace at a reasonable price.

7

37. Propane gas detectors are armed with electronic sensors that detect the presence of combustible gases.

38. Propane gas detectors provide an audible and/or visual warning long before an accumulation of fugitive gas reaches explosive levels.

39. By being warned before fugitive gas reaches explosive levels, a travel trailer's occupants are afforded time and opportunity to take steps to remove themselves from the hazard and to remediate the hazard so that harm is avoided.

40. Unbeknownst to consumers such as Plaintiffs, propane gas cannot safely be used unless a properly installed and functioning gas detector is in place within the trailer to detect fugitive gas should a leak develop.

41. The propane gas detector should be installed in a location in the Unit where it would be reasonably foreseeable that a gas leak could occur, such as near a propane gas appliance.

42. Defendants were negligent in failing to have had in place an adequate customer education and warnings program sufficient to teach users of their vehicles the hazards of propane gas use and how to ameliorate, reduce, or lessen the likelihood that the hazard develops or causes harm.

43. Defendant Forest River owed a duty to Plaintiffs to provide them with an electronic propane gas detector, and/or require the installation and use of a properly operating electronic propane gas detector as a precondition to selling the Unit and/or to adequately and sufficiently warn Plaintiffs concerning the need for, feasibility, and availability of electronic gas detectors.

44. Defendant MTI manufactured a propane gas alarm model number 30-441, 30-442, or like model for use in Forest River travel trailers.

45. Defendant Forest River either installed, or should have installed, the above-mentioned products manufactured by MTI in the Unit purchased by Richard and Pamela.

8

46.     Defendants Forest River, Camping World, and MTI were negligent in that the Unit and the propane gas alarm were defective in their design, and/or were negligent by failing to properly install the electronic propane gas alarm in the Unit.

47.     Defendant Whirlpool manufactured, through its Maytag brand name, the gas range that was installed in the Unit.

48.     Defendant Whirlpool failed to properly install a flame failure device ("FFD"), also known as a thermocouple protected burner, in the range that was installed in the Unit.

49.     The stovetop burners are high energy and can release a huge amount of propane into a small, predominately airtight, confined space in a relatively short amount of time.

50.     FFD's have been commercially available at all pertinent times hereto.

51.     FFD's are simple to install and economically feasible to install.

52.     FFD's are extremely effective in preventing unintended propane discharge.

53.     Whirlpool knew of the dangerous condition associated with the range and its lack of a FFD that could foreseeably lead to a fugitive propane gas explosion.

54.     FFD's are inexpensive, reliable, and readily available safety devices.

55.     The Unit and propane gas system were so designed by the Defendants as to permit propane gas to leak and escape into the interior of the Unit. It was foreseeable that propane gas could leak and the fugitive gas would escape into the Unit.

56.     The National Fire Protection Association Standard 1192: Standard on Recreational Vehicles ("NFPA 1192"), sets forth standards governing the construction of recreational vehicles, such as the Unit involved in this incident.

57.     NFPA 1192 Section 5.3.8.3 regarding Propane Piping Systems and specifically, Routing and Protection of Tubing, provides: "Tubing shall be routed to be protected from physical damage, sharp edges, and moving parts."

58.     NFPA 1192 Section 5.3.13.1 provides: "Where nonmetallic tubing or hose is used within the propane piping system, it shall be permitted to pass directly through any floor, wall, partition, or ceiling, provided the entire length of hose is readily available for inspection, provision is made to protect against chafing, and no part of the flexible nonmetallic tubing or hose is concealed in the hollow space of a floor, wall, partition, or ceiling."

59.     NFPA 1192 Section 6.4.8 Propane Detectors, provides: "All recreational vehicles equipped with a propane appliance and electrical system shall be equipped with a propane detector listed and marked on the device as being suitable for use in recreational vehicles under the requirements of UL 1484 and installed according to the terms of its listing."

60.     Each of the Defendants possessed superior knowledge, skill, expertise, and experience with regard to the hazards, dangers, risks, characteristics and propensities of propane gas, propane gas systems, and the necessary circumstances which must exist for propane gas to be safely used or consumed in the travel trailer setting.

61.     Plaintiffs did not possess an equivalent level of knowledge, skill, or experience with regard to such matters.

62.     Plaintiffs reasonably relied upon the Defendants and/or their agents, partners, and/or affiliates to provide them all the information that was needed to use the propane system and appliances in a safe manner within the Unit.

63.     Defendants knew, or should have known, that human physiological and psychological limitations also limit the effectiveness of the odorant used in propane gas systems as a warning agent and render it an incomplete and insufficient warning agent, when standing alone.

64.     Defendant Camping World owed a duty to Plaintiffs to provide them with an electronic propane gas detector, and/or require the installation and use of a properly operating electronic propane gas detector as a precondition to selling the Unit and/or to adequately and

10

sufficiently warn Plaintiffs concerning the need for, feasibility, and availability of electronic gas detectors.

65.     Defendant Camping World, Defendant Loveland, John Doe 1, John Doe 2, and John Doe 3 owed a duty to Plaintiffs to perform a thorough and complete walkthrough demonstration of the Unit to provide Pamela and Richard with information regarding operation of the Unit.

66.     Defendant Camping World, Defendant Loveland, Defendant John Doe 1, Defendant John Doe 2, and Defendant John Doe 3 owed a duty to Plaintiffs to fully explain all of the system functions and to supply component information for items used in the manufacture of the Unit.

67.     Defendant Camping World, Defendant Loveland, Defendant John Doe 1, Defendant John Doe 2, and Defendant John Doe 3 owed a duty to Plaintiffs to inspect both factory and dealer installed components for proper operation.

68.     Defendant Camping World, Defendant Loveland, Defendant John Doe 1, Defendant John Doe 2, and Defendant John Doe 3 breached their multiple duties to the Plaintiffs by failing to provide Plaintiffs with an electronic gas detector and/or to adequately and sufficiently warn Plaintiffs concerning the need for, feasibility, and availability of electronic gas detectors, and/or require Plaintiffs to install and use an electronic propane gas detector as a precondition to selling the Unit, and/or supplying them with a propane gas system.

69.     Defendant AIRXCEL, through its Suburban brand name, manufactured the furnace that was installed in the Unit.

70.     Defendant AIRXCEL improperly designed and manufactured the furnace to prevent propane gas from escaping into the Unit from the propane gas lines that supply gas to the furnace.

71.     Each of the Defendants should be held to an expert standard of care with respect to their dealings that concern the Plaintiffs, their injuries, and/or their damages.

72.     The explosion and/or the harm, injury, and damages resulting from the explosion were reasonably foreseeable to Defendants and are within the scope of each Defendant's liability.

**COUNT I—NEGLIGENCE**
**ALL DEFENDANTS**

73.     Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

74.     Defendant Forest River had a duty to manufacture, design, distribute, furnish, and sell the Unit and its component parts in a safe and reasonable manner.

75.     Defendant Forest River breached its duty to Plaintiffs, by and through its agents, servants, or employees, and committed the following acts of negligence and carelessness, to-wit:

   a.   Improperly designing the gas system so as to permit propane gas to leak, escape, and go unnoticed by the occupants into the interior of the Unit;

   b.   Improperly designing the gas system in violation of NFPA 1192 Section 5.3.8.3 in that the propane gas supply line to the range/oven in the Unit was not routed to be protected from physical damage, sharp edges, or moving parts;

   c.   Improperly designing the gas system in violation of NFPA 1192 Section 5.3.13.1 in that the propane gas supply line to the stove of the Unit was constructed with nonmetallic tubing or hose and no provision was made to protect against chafing and the tubing was otherwise not readily available for inspection;

   d.   Manufacturing, designing, distributing, and/or selling the Unit in violation of NFPA 1192 Section 6.4.8 in that the Unit was either not equipped with a propane detector or, alternatively, by installing and failing to adequately inspect or test the propane detector that was installed in the Unit.

12

    e.   Failing to warn or give adequate warnings to occupants and other consumers and users of the defective nature of the Unit; and

    f.   Any and all other acts of negligence which may further be identified during the course of discovery and litigation of this matter and which may be proven at trial.

76.    Defendant Forest River was negligent in the development of the Unit by failing to adequately test for leaks that may occur in the propane gas supply system and for failing to adequately test the component parts of the Unit including, but not limited to, the propane gas detector.

77.    Defendant Forest River breached its express warranties in that such products were reported in advertising, literature, and manuals as being safe when they were not.

78.    Defendant Forest River failed to exercise its duties under the National Fire Protection Association standards.

79.    Defendant Camping World, by and through its agents, servants, and/or employees committed the following acts of negligence and carelessness, to-wit:

    a.   Selling the Unit that was involved in this accident while the Unit was in a dangerous condition in that the propane gas system was improperly designed and installed so as to allow propane gas to leak, and in that the Unit was either not equipped with a propane gas detector or, alternatively, was equipped with a defective propane gas detector;

    b.   Failing to properly inspect the Unit to discover the dangerously defective conditions involving the propane gas system or the propane gas detector;

    c.   Failing to properly repair and/or warn the owner or user of the Unit about the dangers involving the propane gas system and the propane gas detector;

d.  Failing to inform the owner or user of the Unit about the dangers involving the defective condition of the propane gas system and the propane gas detector during all anticipated usages of the Unit;

e.  Failing to replace the defective propane gas detector during the time Defendant did the pre-sale inspection of the Unit or performed other service or maintenance work to the Unit;

f.  Failing to repair or replace the defective propane gas supply line to the stove during the time Defendant did the pre-sale inspection of the Unit or performed other service or maintenance work to the Unit; and

g.  Any and all other acts of negligence which may further be identified during the course of discovery and litigation of this matter and which may be proven at trial.

80.  Defendant Loveland committed the following acts of negligence or carelessness, to wit:

a.  Failing to properly inspect the Unit to discover the dangerously defective conditions involving the propane gas system or the propane gas detector;

b.  Failing to properly repair and/or warn the owner or user of the Unit about the dangers involving the propane gas system and the propane gas detector;

c.  Failing to inform the owner or user of the Unit about the dangers involving the defective condition of the propane gas system and the propane gas detector during all anticipated usages of the Unit;

d.  Failing to replace the defective propane gas detector during the time Defendant did the pre-sale inspection of the Unit or performed other service or maintenance work to the Unit;

14

e. Failing to repair or replace the defective propane gas supply line to the stove during the time Defendant did the pre-sale inspection of the Unit or performed other service or maintenance work to the Unit; and

f. Any and all other acts of negligence which may further be identified during the course of discovery and litigation of this matter and which may be proven at trial.

81. Defendant MTI committed the following acts of negligence or carelessness, to-wit:

a. Improperly designing the propane gas detector;

b. Failing to properly manufacture and assemble the propane gas detector;

c. Failing to properly test the operation of the propane gas detector;

d. Failing to warn of the defective nature of the propane gas detector; and

e. Any and all other acts of negligence which may further be identified during the course of discovery and litigation of this matter and which may be proven at trial.

82. Defendant Whirlpool committed the following acts of negligence or carelessness, to-wit:

a. Improperly designing and manufacturing the range that was installed in the Unit so as to prevent fugitive gas from escaping into the Unit;

b. Failing to properly design and manufacture the range by installing flame failure devices on the range so as to prevent fugitive gas from escaping into the Unit through an unlit burner on the cooktop;

c. Manufacturing and placing into the stream of commerce a defective and unreasonably dangerous product; and

d. Any and all other acts of negligence which may further be identified during the course of discovery and litigation of this matter and which may be proven at trial.

15

83.     Defendant AIRXCEL committed the following acts of negligence or carelessness, to wit:

a.   Improperly designing and manufacturing the furnace, including its component parts, so as to prevent fugitive gas from escaping into the Unit;

b.   Improperly designing the propane gas system, including its access piping; and

c.   Any and all other acts of negligence which may further be identified during the course of discovery and litigation of this matter and which may be proven at trial.

84.     Defendant John Doe 1, Defendant John Doe 2, and Defendant John Doe 3 committed the following acts of negligence or carelessness, to wit:

a.   Failing to properly inspect the Unit to discover the dangerously defective conditions involving the propane gas system or the propane gas detector;

b.   Failing to properly repair and/or warn the owner or user of the Unit about the dangers involving the propane gas system and the propane gas detector;

c.   Failing to inform the owner or user of the Unit about the dangers involving the defective condition of the propane gas system and the propane gas detector during all anticipated usages of the Unit;

d.   Failing to replace the defective propane gas detector during the time Defendant did the pre-sale inspection of the Unit or performed other service or maintenance work to the Unit;

e.   Failing to repair or replace the defective propane gas supply line to the stove during the time Defendant did the pre-sale inspection of the Unit or performed other service or maintenance work to the Unit; and

f.   Any and all other acts of negligence which may further be identified during the course of discovery and litigation of this matter and which may be proven at trial.

16

85.     Defendants sold the products described herein with knowledge of the defects and dangers hereinabove alleged and committed the negligent acts hereinabove alleged under circumstances which show complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendants and to deter Defendants and others from like conduct.

86.     As a direct, actual, and proximate cause of the aforesaid fault and/or negligence of Defendants, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

    a.   Pecuniary losses suffered by reason of Richard's death;

    b.   Medical expenses;

    c.   Funeral expenses;

    d.   Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

    e.   The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

    f.   The reasonable value of Richard's:

       i.   Services;

      ii.   Companionship;

     iii.   Comfort;

     iv.   Instruction;

      v.   Guidance;

     vi.   Counsel;

    vii.   Training; and

viii. Support.

87. As a direct, actual, and proximate cause of the aforesaid fault and/or negligence of Defendants, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a. The reasonable, usual, and customary cost of the past, present, and future medical care;

    b. The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c. Loss of consortium with her husband, Richard, between the date of the explosion and his death;

    d. Past, present, and future physical and mental pain and suffering and emotional distress;

    e. Past, present, and future loss of enjoyment of life;

    f. Past, present, and future loss of function of the body and mind;

    g. Past, present, and future disability and psychological injuries;

    h. Past, present, and future disfigurement; and

    i. Property damage.

88. As a direct, actual, and proximate cause of the aforesaid fault and/or negligence of Defendants, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a. The reasonable, usual, and customary cost of the past, present, and future medical care;

18

b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c.  Lost earnings capacity;

d.  Past, present, and future physical and mental pain and suffering and emotional distress;

e.  Past, present, and future loss of enjoyment of life;

f.  Past, present, and future loss of function of the body and mind;

g.  Past, present, and future disability and psychological injuries; and

h.  Past, present, and future disfigurement.

89.  As a direct, actual, and proximate cause of the aforesaid fault and/or negligence of Defendants, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants, each of them jointly and severally, for damages including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

## COUNT II—STRICT LIABILITY (PRODUCT DEFECT) DEFENDANT FOREST RIVER

90.  Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

91.  Defendant Forest River was in the business of designing, manufacturing and distributing component parts for the Unit and the Unit itself.

19

92.     Defendant Forest River designed, manufactured, sold and/or distributed the Unit in the course of its business.

93.     The Unit, at the time of the accident that is the subject of this Petition, was in substantially the same condition as when it was designed, manufactured, and distributed by Defendant Forest River.

94.     The Unit as designed, manufactured, and distributed was defective and unreasonably dangerous when put to an intended or reasonably anticipated use.

95.     At all times herein mentioned, the Unit was being used in the manner intended, or reasonably anticipated, by Defendant Forest River.

96.     The propane gas system in the Unit was then in a defective condition and unreasonably dangerous when put to an intended or reasonably anticipated use in that propane gas leaked into the Unit.

97.     As a direct, actual, and proximate cause of the defective and unreasonably dangerous conditions that existed in the Unit, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

a.   Pecuniary losses suffered by reason of Richard's death;

b.   Medical expenses;

c.   Funeral expenses;

d.   Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

e.   The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

f.   The reasonable value of Richard's:

20

      i.   Services;

     ii.   Companionship;

   iii.   Comfort;

   iv.   Instruction;

     v.   Guidance;

   vi.   Counsel;

  vii.   Training; and

 viii.   Support.

98.    As a direct, actual, and proximate cause of the defective and unreasonably dangerous conditions that existed in the Unit, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.   The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.   The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.   Loss of consortium with her husband, Richard, between the date of the explosion and his death;

    d.   Past, present, and future physical and mental pain and suffering and emotional distress;

    e.   Past, present, and future loss of enjoyment of life;

    f.   Past, present, and future loss of function of the body and mind;

    g.   Past, present, and future disability and psychological injuries;

    h.   Past, present, and future disfigurement; and

    i.   Property damage.

99.     As a direct, actual, and proximate cause of the defective and unreasonably dangerous conditions that existed in the Unit, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.  Lost earnings capacity;

    d.  Past, present, and future physical and mental pain and suffering and emotional distress;

    e.  Past, present, and future loss of enjoyment of life;

    f.  Past, present, and future loss of function of the body and mind;

    g.  Past, present, and future disability and psychological injuries; and

    h.  Past, present, and future disfigurement.

100.    As a direct, actual, and proximate cause of the defective and unreasonably dangerous conditions that existed in the Unit, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress damages.

101.    Defendant Forest River consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendants Forest River for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the

Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

### COUNT III—STRICT LIABILITY (PRODUCT DEFECT) DEFENDANT CAMPING WORLD

102.    Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

103.    Defendant Camping World sold the Unit in the course of Defendant's business.

104.    At the time of the sale, the Unit was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use.

105.    At all times pertinent hereto, the Unit was used in a manner reasonably anticipated.

106.    As a direct, actual, and proximate cause the defective condition as existed when the Unit was sold by Defendant Camping World, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

    a.    Pecuniary losses suffered by reason of Richard's death;

    b.    Medical expenses;

    c.    Funeral expenses;

    d.    Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

    e.    The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

    f.    The reasonable value of Richard's:

        i.    Services;

23

    ii.  Companionship;

   iii.  Comfort;

   iv.  Instruction;

    v.  Guidance;

   vi.  Counsel;

  vii.  Training; and

  viii.  Support.

107.    As a direct, actual, and proximate cause the defective condition as existed when the Unit was sold by Defendant Camping World, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.  Loss of consortium with her husband, Richard, between the date of the explosion and his death;

    d.  Past, present, and future physical and mental pain and suffering and emotional distress;

    e.  Past, present, and future loss of enjoyment of life;

    f.  Past, present, and future loss of function of the body and mind;

    g.  Past, present, and future disability and psychological injuries;

    h.  Past, present, and future disfigurement; and

    i.  Property damage.

108.    As a direct, actual, and proximate cause the defective condition as existed when the Unit was sold by Defendant Camping World, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.   The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.   The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.   Lost earnings capacity;

    d.   Past, present, and future physical and mental pain and suffering and emotional distress;

    e.   Past, present, and future loss of enjoyment of life;

    f.   Past, present, and future loss of function of the body and mind;

    g.   Past, present, and future disability and psychological injuries; and

    h.   Past, present, and future disfigurement.

109.    As a direct, actual, and proximate cause the defective condition as existed when the Unit was sold by Defendant Camping World, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

110.    Defendant Camping World consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant Camping World for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the

25

Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

## COUNT IV—STRICT LIABILITY (PRODUCT DEFECT) DEFENDANT MTI

111.    Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

112.    Defendant MTI manufactured and sold in the course of Defendant's business the propane gas detector that was, or should have been, installed in the Unit.

113.    The propane gas detector that was, or should have been, installed in the Unit was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use.

114.    The Unit was used in a manner reasonably anticipated.

115.    As a direct, actual, and proximate cause of the defective condition of Defendant MTI's products as existed at the time those products were sold, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

a.   Pecuniary losses suffered by reason of Richard's death;

b.   Medical expenses;

c.   Funeral expenses;

d.   Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

e.   The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

f.   The reasonable value of Richard's:

26

    i.  Services;

    ii.  Companionship;

    iii.  Comfort;

    iv.  Instruction;

    v.  Guidance;

    vi.  Counsel;

    vii.  Training; and

    viii.  Support.

116.    As a direct, actual, and proximate cause of the defective condition of Defendant MTI's products as existed when those products were sold, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c.  Loss of consortium with her husband, Richard, between the date of the explosion and his death;

d.  Past, present, and future physical and mental pain and suffering and emotional distress;

e.  Past, present, and future loss of enjoyment of life;

f.  Past, present, and future loss of function of the body and mind;

g.  Past, present, and future disability and psychological injuries;

h.  Past, present, and future disfigurement; and

i.  Property damage.

117.     As a direct, actual, and proximate cause of the defective condition of Defendant MTI's products as existed when those products were sold, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c.  Lost earnings capacity;

d.  Past, present, and future physical and mental pain and suffering and emotional distress;

e.  Past, present, and future loss of enjoyment of life;

f.  Past, present, and future loss of function of the body and mind;

g.  Past, present, and future disability and psychological injuries; and

h.  Past, present, and future disfigurement.

118.     As a direct, actual, and proximate cause of the defective condition of Defendant MTI's products as existed when those products were sold, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

119.     Defendant MTI consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant MTI for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the Associate

28

Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

### COUNT V – STRICT LIABILITY (PRODUCT DEFECT) DEFENDANT WHIRLPOOL

120.    Plaintiffs replead, restate, and realleged each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

121.    Defendant Whirlpool manufactured and sold in the course of Defendant's business, the range/oven that was installed in the Unit.

122.    The range/oven that was installed in the Unit was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use.

123.    The Unit was used in a manner reasonably anticipated.

124.    As a direct, actual, and proximate cause of the defective condition of Defendant Whirlpool's product as existed when that product was sold, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

    a.    Pecuniary losses suffered by reason of Richard's death;

    b.    Medical expenses;

    c.    Funeral expenses;

    d.    Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

    e.    The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

    f.    The reasonable value of Richard's:

i.      Services;

ii.     Companionship;

iii.    Comfort;

iv.    Instruction;

v.      Guidance;

vi.     Counsel;

vii.    Training; and

viii.   Support.

125.    As a direct, actual, and proximate cause of the defective condition of Defendant Whirlpool's product as existed when the product was sold, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a.   The reasonable, usual, and customary cost of the past, present, and future medical care;

b.   The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c.   Loss of consortium with her husband, Richard, between the date of the explosion and his death;

d.   Past, present, and future physical and mental pain and suffering and emotional distress;

e.   Past, present, and future loss of enjoyment of life;

f.   Past, present, and future loss of function of the body and mind;

g.   Past, present, and future disability and psychological injuries;

h.   Past, present, and future disfigurement; and

i.   Property damage.

126.    As a direct, actual, and proximate cause of the defective condition of Defendant Whirlpool's product as existed when the product was sold, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.  Lost earnings capacity;

    d.  Past, present, and future physical and mental pain and suffering and emotional distress;

    e.  Past, present, and future loss of enjoyment of life;

    f.  Past, present, and future loss of function of the body and mind;

    g.  Past, present, and future disability and psychological injuries; and

    h.  Past, present, and future disfigurement.

127.    As a direct, actual, and proximate cause of the defective condition of Defendant Whirlpool's product as existed when the product was sold, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

128.    Defendant Whirlpool consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant Whirlpool for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the

31

Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

## COUNT VI – STRICT LIABILITY (PRODUCT DEFECT) DEFENDANT AIRXCEL

129.     Plaintiffs replead, restate, and realleged each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

130.     Defendant AIRXCEL manufactured and sold in the course of Defendant's business the furnace that was installed in the Unit.

131.     The furnace that was installed in the Unit was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use.

132.     The Unit was used in a manner reasonably anticipated.

133.     As a direct, actual, and proximate cause of the defective condition of Defendant AIRXCEL'S product as existed when that product was sold, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

a.   Pecuniary losses suffered by reason of Richard's death;

b.   Medical expenses;

c.   Funeral expenses;

d.   Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

e.   The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

f.   The reasonable value of Richard's:

32

i.      Services;

ii.      Companionship;

iii.      Comfort;

iv.      Instruction;

v.      Guidance;

vi.      Counsel;

vii.      Training; and

viii.      Support.

134. As a direct, actual, and proximate cause of the defective condition of Defendant AIRXCEL'S product as existed when the product was sold, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a. The reasonable, usual, and customary cost of the past, present, and future medical care;

b. The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c. Loss of consortium with her husband, Richard, between the date of the explosion and his death;

d. Past, present, and future physical and mental pain and suffering and emotional distress;

e. Past, present, and future loss of enjoyment of life;

f. Past, present, and future loss of function of the body and mind;

g. Past, present, and future disability and psychological injuries;

h. Past, present, and future disfigurement; and

i. Property damage.

33

135.    As a direct, actual, and proximate cause of the defective condition of Defendant AIRXCEL'S product as existed when the product was sold, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.   The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.   The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.   Lost earnings capacity;

    d.   Past, present, and future physical and mental pain and suffering and emotional distress;

    e.   Past, present, and future loss of enjoyment of life;

    f.   Past, present, and future loss of function of the body and mind;

    g.   Past, present, and future disability and psychological injuries; and

    h.   Past, present, and future disfigurement.

136.    As a direct, actual, and proximate cause of the defective condition of Defendant AIRXCEL'S product as existed when the product was sold, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

137.    Defendant AIRXCEL consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant AIRXCEL for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the

34

Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

**COUNT VII—STRICT LIABILITY (FAILURE TO WARN)**
**DEFENDANTS FOREST RIVER, CAMPING WORLD, MTI, WHIRLPOOL, AND AIRXCEL**

138.    Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

139.    Defendants Forest River, Camping World, MTI, Whirlpool, and AIRXCEL manufactured, designed, marketed, and/or sold the Unit, and/or the Unit's component parts, in the course of Defendants' businesses.

140.    At the time of its sale to Plaintiffs Richard and Pamela, the Unit was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics.

141.    Defendants Forest River, Camping World, MTI, Whirlpool, and AIRXCEL did not give an adequate warning of the danger to Plaintiffs.

142.    As a direct, actual, and proximate result of the Unit being sold without an adequate warning, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

    a.    Pecuniary losses suffered by reason of Richard's death;

    b.    Medical expenses;

    c.    Funeral expenses;

    d.    Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

    e.   The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

    f.   The reasonable value of Richard's:

        i.   Services;

        ii.   Companionship;

        iii.   Comfort;

        iv.   Instruction;

        v.   Guidance;

        vi.   Counsel;

        vii.   Training; and

        viii.   Support.

143.    As a direct, actual, and proximate result of the Unit being sold without an adequate warning, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.   The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.   The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.   Loss of consortium with her husband, Richard, between the date of the explosion and his death;

    d.   Past, present, and future physical and mental pain and suffering and emotional distress;

    e.   Past, present, and future loss of enjoyment of life;

    f.   Past, present, and future loss of function of the body and mind;

    g.   Past, present, and future disability and psychological injuries;

    h.   Past, present, and future disfigurement; and

    i.   Property damage.

144.    As a direct, actual, and proximate result of the Unit being sold without an adequate warning, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.   The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.   The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.   Lost earnings capacity;

    d.   Past, present, and future physical and mental pain and suffering and emotional distress;

    e.   Past, present, and future loss of enjoyment of life;

    f.   Past, present, and future loss of function of the body and mind;

    g.   Past, present, and future disability and psychological injuries; and

    h.   Past, present, and future disfigurement.

145.    As a direct, actual, and proximate result of the Unit being sold without an adequate warning, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

146.    Defendants Forest River, Camping World, MTI, Whirlpool, and AIRXCEL consciously disregarded or were completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendants' conduct herein showed complete indifference to or conscious disregard

for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendants Forest River, Camping World, MTI, Whirlpool, and AIRXCEL, each of them jointly and severally, for damages including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

## COUNT VIII—BREACH OF WARRANTY
## DEFENDANT FOREST RIVER

147.    Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

148.    It was, at all times relevant hereto, impliedly warranted that the Defendant Forest River would use reasonable and appropriate care and skill, that is, to do a workmanlike and professional job, in their design, manufacture, and supply of the Unit to Plaintiffs.

149.    By negligently committing the acts and omissions alleged throughout this Petition, Defendant Forest River breached said implied warranties.

150.    Furthermore, Defendant Forest River impliedly warranted to Plaintiffs that the systems in the Unit were merchantable and fit for the ordinary purposes for which the Unit was used.

151.    Defendant Forest River sold and/or placed the Unit into the stream of commerce and Plaintiffs Richard and Pamela purchased the Unit.

152.    When sold by Defendant Forest River, the systems in the Unit, and the Unit itself, were not fit for their ordinary purposes.

153.     As a direct, actual, and proximate cause of the Unit not being merchantable and fit for the ordinary purposes for which it was used, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

    a.   Pecuniary losses suffered by reason of Richard's death;

    b.   Medical expenses;

    c.   Funeral expenses;

    d.   Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

    e.   The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

    f.   The reasonable value of Richard's:

        i.   Services;

        ii.   Companionship;

        iii.   Comfort;

        iv.   Instruction;

        v.   Guidance;

        vi.   Counsel;

        vii.   Training; and

        viii.   Support.

154.     As a direct, actual, and proximate cause of the Unit not being merchantable and fit for the ordinary purposes for which it was used, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

39

a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c.  Loss of consortium with her husband, Richard, between the date of the explosion and his death;

d.  Past, present, and future physical and mental pain and suffering and emotional distress;

e.  Past, present, and future loss of enjoyment of life;

f.  Past, present, and future loss of function of the body and mind;

g.  Past, present, and future disability and psychological injuries;

h.  Past, present, and future disfigurement; and

i.  Property damage.

155.    As a direct, actual, and proximate cause of the Unit not being merchantable and fit for the ordinary purposes for which it was used, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c.  Lost earnings capacity;

d.  Past, present, and future physical and mental pain and suffering and emotional distress;

e.  Past, present, and future loss of enjoyment of life;

40

Electronically Filed - Clinton - March 01, 2017 - 10:47 AM

f.   Past, present, and future loss of function of the body and mind;

g.   Past, present, and future disability and psychological injuries; and

h.   Past, present, and future disfigurement.

156.   As a direct, actual, and proximate cause of the Unit not being merchantable and fit for the ordinary purposes for which it was used, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

157.   Defendant Forest River consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed a complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant Forest River for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

## COUNT IX—BREACH OF WARRANTY
## DEFENDANT CAMPING WORLD

158.   Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

159.   It was, at all times relevant hereto, impliedly warranted that Defendant Camping World would use reasonable and appropriate care and skill, that is, to do a workmanlike and professional job, in their design, manufacture, repair, maintenance, and supply of the Unit to Plaintiffs.

41

160. By negligently committing the acts and omissions alleged throughout this Petition, Defendant Camping World breached said implied warranties.

161. Furthermore, Defendant Camping World impliedly warranted to Plaintiffs that the systems in the Unit were merchantable and fit for the ordinary purposes for which the Unit was used.

162. Defendant Camping World sold, and Plaintiffs Richard and Pamela, purchased the Unit.

163. Defendant Camping World impliedly warranted to Plaintiffs that the Unit was merchantable and fit for the ordinary purposes for which the Unit was used.

164. When sold by Defendant Camping World, the Unit was not fit for its ordinary purposes.

165. Plaintiffs used the Unit for its ordinary purposes.

166. As a direct, actual, and proximate result of the breach of warranty by Defendant Camping World, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

    a. Pecuniary losses suffered by reason of Richard's death;

    b. Medical expenses;

    c. Funeral expenses;

    d. Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

    e. The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

    f. The reasonable value of Richard's:

        i. Services;

     ii.   Companionship;

     iii.  Comfort;

     iv.  Instruction;

     v.   Guidance;

     vi.  Counsel;

     vii.  Training; and

     viii. Support.

167.    As a direct, actual, and proximate result of the breach of warranty by Defendant Camping World, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.  Loss of consortium with her husband, Richard, between the date of the explosion and his death;

    d.  Past, present, and future physical and mental pain and suffering and emotional distress;

    e.  Past, present, and future loss of enjoyment of life;

    f.  Past, present, and future loss of function of the body and mind;

    g.  Past, present, and future disability and psychological injuries;

    h.  Past, present, and future disfigurement; and

    i.  Property damage.

168.     As a direct, actual, and proximate result of the breach of warranty by Defendant Camping World, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c.  Lost earnings capacity;

d.  Past, present, and future physical and mental pain and suffering and emotional distress;

e.  Past, present, and future loss of enjoyment of life;

f.  Past, present, and future loss of function of the body and mind;

g.  Past, present, and future disability and psychological injuries; and

h.  Past, present, and future disfigurement.

169.     As a direct, actual, and proximate result of the breach of warranty by Defendant Camping World, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

170.     Defendant Camping World consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed a complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant Camping World for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the

44

Electronically Filed - Clinton - March 01, 2017 - 10:47 AM

Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

### COUNT X—BREACH OF WARRANTY
### DEFENDANT MTI

171. Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

172. It was, at all times relevant hereto, impliedly warranted that the Defendant MTI would use reasonable and appropriate care and skill, that is, to do a workmanlike and professional job, in their design, manufacture, and supply of the Unit to Plaintiffs.

173. By negligently committing the acts and omissions alleged throughout this Petition, Defendant MTI breached said implied warranties.

174. Furthermore, Defendant MTI impliedly warranted to Plaintiffs that the systems in the Unit were merchantable and fit for the ordinary purposes for which the Unit was used.

175. Defendant MTI manufactured and sold the propane detector that was, or should have been, installed in the Unit.

176. Defendant MTI impliedly warranted to Plaintiffs that the propane detector was merchantable and fit for the ordinary purposes of use in the Unit.

177. When sold by Defendant MTI, the propane detector in the Unit was not fit for its ordinary purposes.

178. Plaintiffs used the Unit for its ordinary purposes, including the propane gas system.

179. As a direct, actual, and proximate result of the breach of warranty by Defendant MTI, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately

resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. §

537.080, sustained the following damages:

    a.   Pecuniary losses suffered by reason of Richard's death;

    b.   Medical expenses;

    c.   Funeral expenses;

    d.   Damages suffered by Richard between the time of injury and his death, for which he

        might have maintained an action but for his death;

    e.   The physical, mental, and emotional pain and suffering endured by Richard between

        the time of injury and his death; and

    f.   The reasonable value of Richard's:

        i.   Services;

        ii.   Companionship;

        iii.   Comfort;

        iv.   Instruction;

        v.   Guidance;

        vi.   Counsel;

        vii.   Training; and

        viii.   Support.

180.    As a direct, actual, and proximate result of the breach of warranty by Defendant MTI,

Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-

economic, including as follows:

    a.   The reasonable, usual, and customary cost of the past, present, and future medical

        care;

b. The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c. Loss of consortium with her husband, Richard, between the date of the explosion and his death;

d. Past, present, and future physical and mental pain and suffering and emotional distress;

e. Past, present, and future loss of enjoyment of life;

f. Past, present, and future loss of function of the body and mind;

g. Past, present, and future disability and psychological injuries;

h. Past, present, and future disfigurement; and

i. Property damage.

181. As a direct, actual, and proximate result of the breach of warranty by Defendant MTI, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a. The reasonable, usual, and customary cost of the past, present, and future medical care;

b. The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c. Lost earnings capacity;

d. Past, present, and future physical and mental pain and suffering and emotional distress;

e. Past, present, and future loss of enjoyment of life;

f. Past, present, and future loss of function of the body and mind;

g. Past, present, and future disability and psychological injuries; and

47

h. Past, present, and future disfigurement.

182. As a direct, actual, and proximate result of the breach of warranty by Defendant MTI, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

183. Defendant MTI consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant's conduct herein showed a complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant MTI for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

## COUNT XI—BREACH OF WARRANTY
## DEFENDANT WHIRLPOOL

184. Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

185. It was, at all times relevant hereto, impliedly warranted that the Defendant Whirlpool would use reasonable and appropriate care and skill, that is, to do a workmanlike and professional job, in their design, manufacture, and supply of the furnace installed in the Unit that was sold to Plaintiffs.

186. By negligently committing the acts and omissions alleged throughout this Petition, Defendant Whirlpool breached said implied warranties.

187.    Furthermore, Defendant Whirlpool impliedly warranted to Plaintiff that the range/oven that was installed in the Unit was merchantable and fit for the ordinary purposes for which it was to be used.

188.    Defendant Whirlpool manufactured and sold the range/oven that was installed in the Unit.

189.    Defendant Whirlpool impliedly warranted to Plaintiffs that the range/oven was merchantable and fit for the ordinary purposes of use in the Unit.

190.    When sold by Defendant Whirlpool, the range/oven in the Unit was not fit for its ordinary purposes.

191.    Plaintiffs used the Unit for its ordinary purposes, including the propane gas system and range/oven.

192.    As a direct, actual, and proximate result of the breach of warranty by Defendant Whirlpool, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

   a.  Pecuniary losses suffered by reason of Richard's death;

   b.  Medical expenses;

   c.  Funeral expenses;

   d.  Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

   e.  The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

   f.  The reasonable value of Richard's:

      i.  Services;

49

     ii.  Companionship;

    iii.  Comfort;

    iv.  Instruction;

    v.  Guidance;

    vi.  Counsel;

    vii.  Training; and

   viii.  Support.

193.    As a direct, actual, and proximate result of the breach of warranty by Defendant Whirlpool, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.  The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.  The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.  Loss of consortium with her husband, Richard, between the date of the explosion and his death;

    d.  Past, present, and future physical and mental pain and suffering and emotional distress;

    e.  Past, present, and future loss of enjoyment of life;

    f.  Past, present, and future loss of function of the body and mind;

    g.  Past, present, and future disability and psychological injuries;

    h.  Past, present, and future disfigurement; and

    i.  Property damage.

194.     As a direct, actual, and proximate result of the breach of warranty by Defendant Whirlpool, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

    a.   The reasonable, usual, and customary cost of the past, present, and future medical care;

    b.   The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

    c.   Lost earnings capacity;

    d.   Past, present, and future physical and mental pain and suffering and emotional distress;

    e.   Past, present, and future loss of enjoyment of life;

    f.   Past, present, and future loss of function of the body and mind;

    g.   Past, present, and future disability and psychological injuries; and

    h.   Past, present, and future disfigurement.

195.     As a direct, actual, and proximate result of the breach of warranty by Defendant Whirlpool, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

196.     Defendant Whirlpool consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant Whirlpool's conduct herein showed a complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant Whirlpool and to deter Defendant Whirlpool and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant Whirlpool for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the

Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

### COUNT XII—BREACH OF WARRANTY
### DEFENDANT AIRXCEL

197.    Plaintiffs replead, restate, and reallege each and every other paragraph (and subparagraph) of this Petition, including those paragraphs appearing above and below, and by this reference incorporate the same as though fully set forth herein.

198.    It was, at all times relevant hereto, impliedly warranted that the Defendant AIRXCEL would use reasonable and appropriate care and skill, that is, to do a workmanlike and professional job, in their design, manufacture, and supply of the furnace installed in the Unit that was sold to Plaintiffs.

199.    By negligently committing the acts and omissions alleged throughout this Petition, Defendant AIRXCEL breached said implied warranties.

200.    Furthermore, Defendant AIRXCEL impliedly warranted to Plaintiff that the furnace that was installed in the Unit was merchantable and fit for the ordinary purposes for which it was to be used.

201.    Defendant AIRXCEL manufactured and sold the furnace that was installed in the Unit.

202.    Defendant AIRXCEL impliedly warranted to Plaintiffs that the furnace was merchantable and fit for the ordinary purposes of use in the Unit.

203.    When sold by Defendant AIRXCEL, the furnace in the Unit was not fit for its ordinary purposes.

204.    Plaintiffs used the Unit for its ordinary purposes, including the propane gas system and furnace.

52

205.    As a direct, actual, and proximate result of the breach of warranty by Defendant AIRXCEL, Richard sustained personal injuries, and conscious physical pain and emotional suffering, ultimately resulting in his death. Pamela, on behalf of the statutory class of beneficiaries pursuant to R.S.Mo. § 537.080, sustained the following damages:

    a.   Pecuniary losses suffered by reason of Richard's death;

    b.   Medical expenses;

    c.   Funeral expenses;

    d.   Damages suffered by Richard between the time of injury and his death, for which he might have maintained an action but for his death;

    e.   The physical, mental, and emotional pain and suffering endured by Richard between the time of injury and his death; and

    f.   The reasonable value of Richard's:

        i.   Services;

        ii.   Companionship;

        iii.   Comfort;

        iv.   Instruction;

        v.   Guidance;

        vi.   Counsel;

        vii.   Training; and

        viii.   Support.

206.    As a direct, actual, and proximate result of the breach of warranty by Defendant AIRXCEL, Pamela personally suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

53

a. The reasonable, usual, and customary cost of the past, present, and future medical care;

b. The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c. Loss of consortium with her husband, Richard, between the date of the explosion and his death;

d. Past, present, and future physical and mental pain and suffering and emotional distress;

e. Past, present, and future loss of enjoyment of life;

f. Past, present, and future loss of function of the body and mind;

g. Past, present, and future disability and psychological injuries;

h. Past, present, and future disfigurement; and

i. Property damage.

207. As a direct, actual, and proximate result of the breach of warranty by Defendant AIRXCEL, Cody suffered severe, permanent, and long-lasting injuries, both economic and non-economic, including as follows:

a. The reasonable, usual, and customary cost of the past, present, and future medical care;

b. The increased living and medical expenses caused by the injuries suffered as a result of the explosion, including, but not limited to, the amount of increased expenses as determined by a life care planner, physician, or economist;

c. Lost earnings capacity;

d. Past, present, and future physical and mental pain and suffering and emotional distress;

e. Past, present, and future loss of enjoyment of life;

54

f.  Past, present, and future loss of function of the body and mind;

g.  Past, present, and future disability and psychological injuries; and

h.  Past, present, and future disfigurement.

208.  As a direct, actual, and proximate result of the breach of warranty by Defendant AIRXCEL, Zach, who was in the zone of danger at the time of the explosion, suffered severe emotional distress.

209.  Defendant AIRXCEL consciously disregarded or was completely indifferent to the safety of people, including the Plaintiffs and the decedent. Defendant AIRXCEL'S conduct herein showed a complete indifference to or conscious disregard for the safety of others and Plaintiffs are entitled to an additional amount as punitive damages in such sum as will serve to punish Defendant AIRXCEL and to deter Defendant AIRXCEL and others from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendant AIRXCEL for damages, including prejudgment interest, in fair and reasonable sums in excess of the jurisdictional limit of the Associate Circuit Courts, for damages for the aggravating circumstances of Richard's death, for punitive damages, for their costs herein incurred, and for such other relief as is deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues so triable.

55

Respectfully submitted,

**SPEER LAW FIRM, P.A.**


By: _____/s/ Charles F. Speer_____

Charles F. Speer        (MO 40713)
Charles D. Miller       (MO 62352)
104 West 9th Street, Suite 400
Kansas City, Missouri 64105
Tel: (816) 472-3560
Fax: (816) 421-2150
cspeer@speerlawfirm.com
cmiller@speerlawfirm.com

*Attorneys for Plaintiffs*